CHILD, GDN., *v.* SNYDER ET, DEFENDANTS.

Common Pleas Court, Fayette County.

No. 22942.   Decided June 5, 1961.

110

*Mr. Otis B. Core*, for plaintiff.
*Mr. W. S. Paxson*, for Harold G. McLean, Guardian.
*Mr. R. L. Brubaker*, and *Messrs. Junk & Junk*, for Daisy
M. Snyder.

CASE, J. This cause is before the court upon respective motions of the parties hereto as hereinafter quoted and set forth in the enumerated summary of facts and law applicable thereto.

The files and the transcript of the record made at oral argument and hearing in this partition action show:—

1. That the Commissioners' Report was filed herein on May 9, 1961, stating that said estate cannot be divided without manifest injury to its value and estimating the just value thereof at $50,000.00;

2. That, on May 13, 1961, Harold G. McLean, Guardian of Alice C. Renick, an incompetent person, W. S. Paxson, Attorney for Harold G. McLean, Guardian of Alice C. Renick, R. L. Bruebaker, Attorney for Daisy M. Snyder, and Junk & Junk, Attorney for Daisy M. Snyder, filed a motion to elect on behalf of said defendants;

3. That, on May 19, 1961, Ralph K. Child, Guardian, appeared in person before the Court and stated and represented that he, as guardian, was making an election on behalf of his ward Katharine Creamer, and filed a motion which reads as follows:

"Ralph K. Child, Guardian of Katharine Creamer, an incompetent person, respectfully represents to the Court that he has obtained authority from the Probate Court of Fayette County, Ohio, under which he is acting as such guardian, to elect, on behalf of his ward, to take the estate described in the petition at the appraised value thereof.";

4. That, thereafter, on the same date (May 19, 1961), this Court made and issued the following order of sale:—

"This cause came on for hearing this 19th day of May, 1961, on the return of the sheriff and the report of the commissioners appointed herein, and it appearing to the court that said premises cannot be divided by metes and bounds without manifest injury to the value thereof, and that the commissioners have appraised said real estate at $50,000.00, the court finds said return and proceedings in all respects in conformity to law

and the orders of the court, and the same is hereby approved and confirmed.

"Plaintiff and Defendants, both having elected to take the estate involved in this action at the appraised value, and it being impossible for each of them to take the entire estate, the court denies either of them such right, and it will be necessary for the property to be sold as if no election had been made.

"It is therefore ordered that the sheriff of Fayette County, Ohio, sell said real property at public auction; it is further ordered that said sale be made at the door of the court house, as upon execution, at not less than two-thirds of the value returned by said commissioners, and payment of the purchase money shall be made in cash.";

5. That, on May 20, 1961, R. L. Brubaker and Junk & Junk, as attorneys for defendant, Daisy M. Snyder, and W. S. Paxson, as attorney for Harold G. McLean, Guardian of Alice C. Renick, filed the following motion:—

"First branch:

"Now come the defendant Daisy M. Snyder and Harold G. McLean as Guardian of Alice C. Renick, by counsel, and move the court to set aside and recall its order of sale issued in the above-styled case on May 19, 1961, and to set aside its entry of May 19, 1961, ordering sale of the real estate described in plaintiff's petition herein, for the following reason:

"The paper filed in said case which has been treated as an election made by Ralph K. Child, as Guardian of Katharine Creamer, to purchase the real estate described in plaintiff's petition at its appraised value, is not a valid election, but merely a representation to the court that said guardian has been authorized by the Fayette County Probate Court to make such an election; therefore, the only election before the court is the joint election of Daisy M. Snyder and Harold G. McLean as Guardian of Alice C. Renick, and said entry ordering sale should not have been made nor said order of sale issued.

"Second Branch:

"Should the Court rule that said paper is a proper and valid election on behalf of said Katharine Creamer, said defendants further move the Court to set aside said entry and order of sale and said election for the reason that said election was not made

in good faith, said guardian's ward not having sufficient funds with which to purchase said real estate at the appraised value.''

6. That no memorandum was filed with and in support of said defendants' motion;

7. That concurrently with the filing of defendant's said motion, the Court ordered a temporary stay of the order of public sale until further order;

8. That, on May 24, 1961, Otis B. Core, attorney for Ralph K. Child, Guardian of Katharine Creamer, filed a memorandum contra said defendants' motion which reads as follows:

''In this case the plaintiff, as Guardian, made his written representations that he had obtained authority from the Probate Court to take the property at the appraised value and personally appeared requesting the Court to approve such election, upon which the Court made its finding and ordered sale; the defendants having previously elected to take. This is the only possible alternative for the Court to follow in such cases, even though the statute is silent as to the form and procedure.

''Where there is a Guardian, as in this case, and the Probate Court has authorized the action of the Guardian in making the election under Section 5307.19, Revised Code, the Court cannot collaterally attack such decision nor properly impeach the grounds on which it was granted.

''Under the decisions, neither can this Court properly inquire otherwise into the finances of any party electing.

''In the case of *Burch* v. *Brooks et al.*, 15 O. C. C., New Series, 443:

'' 'Bad faith cannot be assumed upon an election to take by a party in interest who is without means of his own with which to make good the obligations assumed under an election to take, where it appears that he is able to make arrangements for meeting the obligation through the aid of others.'

''In the *Burch case* the elector had a buyer who was willing to take the property off his hands for a profit beyond the appraised value; the Court overruled any attempt to set aside the election for bad faith.

''This case was affirmed by the Supreme Court without opinion in 82 Ohio St., 441.

''In *Broadsword* v. *McClellan*, 17 Ohio Law Abs., 389 (page 392):

" 'It is urged on behalf of the plaintiff in error in this case that Winans, who had a very small interest in this property, was not acting in good faith in making the election; that he had some deal or understanding with another party for whom perhaps he was attempting to secure the property or force it to a sale, with an opportunity for the public to bid thereon.

" 'This defendant, Winans, was exercising a legal right to make an election as a part owner of this property, and such being the fact, the Court has no right to be interested in his motives in so doing, whether he desired the property for himself or whether he desired to secure it and dispose of it to someone else, or what the fact may have been in this regard.'

"The election of the plaintiff here was made in a thoroughly valid fashion and full credence must be given it as being made in good faith.";

9. That, on May 24, 1961, after said memorandum had been filed on behalf of plaintiff-guardian (Ralph K. Child), his attorney filed the following motion and memoranda:

"Now comes the plaintiff and moves the Court for an order dismissing defendants' motion, for want of a memorandum of law in support thereof.

"Plaintiff further moves the Court for an order dismissing the stay of the order of sale heretofore issued herein."

"MEMORANDA

"Rules of Practice. Motions.

"Section 1. In every case where a motion or demurrer to a pleading is filed there must accompany said motion or demurrer a memorandum of the points and authorities relied on by him in support of such motion or demurrer.";

10. That, thereafter, on the same date (May 24, 1961), the attorneys for defendant, Daisy M. Snyder, filed the following memorandum in support of said defendants' aforesaid motion to set aside the order of sale:

"The question raised with regard to the form of the purported election on behalf of Katharine Creamer would be determined from the paper itself and it is not believed that any citation of authority would be required on this point.

"With regard to the lack of good faith in making this election, due to inability to purchase because of lack of funds, 'Every tenant in common is given by the statute this right to

elect without regard to whether he has a large exchequer, provided he is making the election in good faith and when the time comes he has the money in hand to carry it out.' (30 Ohio Jurisprudence (Partition), Par. 82, P. 909), but in this case the elector is not a competent person and would not be able to resell the real estate without going through a land sale proceeding, and would be unable to borrow money without a proceeding and authorization therefor in the Probate Court.

"*Burch* v. *Brooks*, 15 O. C. C. (N. S.), 443

"Section 5307.09, Revised Code";

11. That defendants' aforesaid motion to set aside the order of sale and plaintiff's aforesaid motion to dismiss defendants' said motion and to dismiss the stay of the order of sale (made and issued herein on May 20, 1961), each came on to be heard and was heard on May 27, 1961;

12. That Section 5307.19, Revised Code, reads:—

"The guardian of a minor, idiot, imbecile, or insane person, on behalf of his ward, may perform any act, matter, or thing respecting the partition of an estate which such ward could do under Sections 5307.01 to 5307.25, inclusive, Revised Code, if he were of age and of sound mind. On behalf of such ward, the guardian may elect to take the estate, when it cannot be divided without injury, and make payments therefor on the ward's behalf.";

13. That, at said hearing on May 27, 1961, plaintiff-guardian, by his attorney, moved for leave to amend, at bar by interlineation, his motion to elect (dated May 19, 1961); and there being no objection, on the part of defendants, the election of Ralph K. Child, Guardian of Katharine Creamer, was amended at bar by interlineation to include the following language:

"* * * to take the estate described in the petition at the appraised value thereof, for cash, and requests this Court to approve such election.

"Therefore, plaintiff, Ralph K. Child, Guardian for Katharine Creamer, move the Court for leave to take the estate at the appraised value, and to fix the terms of payment therefor.";

14. That, immediately upon the granting of said amendment, counsel for defendants stated and represented to the Court that the first branch of defendants' aforesaid motion to set aside the order of sale "is now a moot question" and that

defendants would proceed to present evidence and argument only upon the second branch of said defendants' motion;

15. That, thereafter, the attorney for Ralph K. Child, Guardian, admitted and represented to the Court that said ward, Katharine Creamer, was without funds at that particular time with which to exercise said election, to take the undivided two-thirds interest of the defendants, Daisy Snyder and Alice C. Renick, an incompetent person;

16. That, immediately thereafter, the attorney for Ralph K. Child, Guardian, and the Court engaged in the following colloquy:—

COURT: "Are you representing to the Court at this time that if this was the only election that you could take the property and dispose of it at a profit?

PLAINTIFF'S COUNSEL: "Yes, we are representing that. It can be disposed of at a profit, and that's the only reason we came in here and made the election. We have absolute qualified assurance that there are parties who will pay more than this appraised value, and we feel that the guardian here would not be acting in good faith as guardian if he did not do what he is here doing."

17. That defendants' counsel then requested leave to call Ralph K. Child, as Guardian of Katharine Creamer, an incompetent person, as upon cross-examination, and counsel for said plaintiff-guardian thereupon objected;

18. That, thereafter, there was colloquy between the Court and counsel which was, in part, as follows:

COURT: "When defendants' counsel indicated that they did desire to take testimony, the record did not then show what it now shows. * * * The record now shows representation by counsel for Ralph K. Child, Guardian, that there are no funds of the ward now available. That is admitted on the record, is it not, by statement of counsel. We do not need any evidence to prove that, do we? It's admitted. And there is further representation made by counsel on behalf of Ralph K. Child as Guardian that they have arrangement whereby they can take this property and sell it at a profit. And that that is the basis of their election. And the question now that the Court has before it, by this objection, is, after considering these two cases,

*Burch* and *Broadsword,* need the Court go any further? What is there now to prove? * * *"

DEFENDANTS' COUNSEL: "If the Court please, I would like to have him testify concerning what arrangements he has made; and I would like to call the Court's attention that this is one of the main points in our contention that this guardian cannot go out and sell real estate wherever he wants to sell it. If he is going to sell the ward's real estate, he would have to go through a proceeding in Probate Court."

COURT: "The Court well recognizes that and the Court says that, if his was the only election, and it was so presented to the Court, being the only election, then the Court would take that into consideration in its entry and order fixing the terms by which the election could be carried out. But here that is not now necessary, for you have two conflicting elections. * * *"

"* * * What could you show by his testimony that has not already been stated by his counsel to be a fact?"

DEFENDANTS' COUNSEL: "I would like to develop what arrangements, if any, had been made for resale of this property at a profit, which is the representation of counsel. * * *"

COURT: "In other words you want him to disclose the prospective purchaser who is comparable to the Mr. Coates referred to in the circuit court decision, and how much profit there is going to be. Now what difference would that make to the issues raised by this motion as to whether or not this election is made in good faith?"

DEFENDANTS' COUNSEL: "The distinction is this, in the Coates arrangement, in the *Burch* v. *Brooks case,* and the court said that in the opinion, in holding that there was good faith, that this man had made an arrangement. He had gone out and he had got someone that would advance the funds and give him $47 profit and he was a competent person who could sell that real estate to anybody he wanted to. Yet, this incompetent ward can't do it. The guardian can't do it for her, he's got to go through Probate Court to sell real estate."

COURT: "Wouldn't it be reasonable, if this Court accepted and approved the election and set up the terms for this guardian

to go to the Probate Court, wouldn't it be reasonable to believe that the Probate Court would let him go through with such a sale? Do you know of any reason why he wouldn't?''

DEFENDANTS' COUNSEL: "Yes, I can think of many reasons why he wouldn't. He's not in a partition action in the Probate Court, he's in a land sale proceeding. * * *''

COURT: "There's a partition action up here, and he goes down there and represents that he has an order of this Common Pleas Court in a partition action permitting him to carry this through for the benefit of his ward to make a profit. Is the court going to deny him down there the right to make a profit for his ward?''

DEFENDANTS' COUNSEL: "If you're talking about a profit of $51,000.00, how much is it going to cost this ward to sell this in a land sale proceeding?''

COURT: "Well, we are not going to go to sale because we've got two conflicting elections. The question is not here. Let's go back again to what the court said here:

" '* * * the court has no right to be interested in his motives in so doing, whether he desired the property for himself or whether he desired to secure it and dispose of it to someone else, or what the fact may have been in this regard.'

"What did the court mean there? What are they talking about? That's awfully strong language. Now, isn't the burden upon the movants here to show bad faith? Not by the guardian's testimony. What is bad faith in a situation of this kind? What is bad faith? How can you be hurt in a partition suit? That's the reason this law is so vague. The property is there, nobody is going to steal it. It's going to public sale. Who is going to be hurt? All parties have the right to the proceeds of the sale. There is only one thing that the Court can see here, that somebody is seeking an advantage, and that's what's raised all these cases. One elector is trying to seek an advantage over another. That's what it boils down to.''

DEFENDANTS' COUNSEL: "If the Court please, we would like very briefly to examine Mr. Child on that one particular point. * * *''

COURT: "Now, the Court has before it an objection to putting him on the stand, and the Court is going to sustain the

objection, on the basis of these two cases. * * * And exceptions are noted.

"Now, we are making here a record for you to go to the Court of Appeals on. Counsel knows and the Judge knows that there are just about two cases that come anywhere near the questions and issues we have in this case. And certainly the Court of Appeals and the Supreme Court, somebody on up the line, is going to have to determine on the facts we have before us, on the record we have here; and if the court has erred, certainly the Court wants to be corrected in this error; but we're standing by these two decisions and the statute law."

DEFENDANT'S COUNSEL: "If the Court please, if we are not permitted to examine Mr. Child concerning his arrangements, which he may or may not have made with regard to this property, we have no further testimony to put on in support of our motion. * * *"

*ULTIMATE FINDINGS OF FACT AND CONCLUSIONS OF LAW*

The Court, upon due consideration of all of the pleadings, motions, memoranda, representations and arguments of counsel, do find:

A. That, although defendants' motion, to set aside said order of sale, was not supported by affidavit or memorandum at the time of the filing thereof as required by the local rule of Court, the Court waived its own rule when it forthwith ordered a temporary stay of said order of sale;

B. That plaintiff-guardian, Ralph K. Child, also waived said local rule of court by filing a memorandum contra defendants' said motion and subsequent thereto filing a motion to dismiss defendants' aforesaid motion to set aside upon the ground that defendants' motion was not supported by memorandum.

C. That the motion of plaintiff-guardian to dismiss defendants' motion, upon the ground that defendants' motion was not supported by memorandum, is not well made and should be denied and overruled;

D. That the first branch of defendants' motion, to set aside said order of sale upon the ground that the paper filed by Ralph K. Child, as Guardian of Katharine Creamer, and

treated as an election, "is not a valid election, but merely a representation to the court that said guardian has been authorized by the Fayette County Probate Court to make such election;" etc., has become moot by reason of the said guardian's amendment of said election at bar by interlineation without objection of defendants; and, therefore, the first branch of defendants' motion to set aside the order of sale should be denied and overruled;

E. That the second branch of defendants' motion, to set aside said order of sale and plaintiff-guardian's election, "for the reason that said election was not made in good faith, said guardian's ward not having sufficient funds with which to purchase said real estate at the appraised value"—is not well made and should be denied and overruled, based upon the reasoning and decisions of the court of appeals in the cases of *Burch* v. *Brooks*, 15 O. C. C. (N. S.), 443, and *Broadsword* v. *McClellan*, 17 Ohio Law Abs., 389, and Section 5307.19, Revised Code, and related sections; when, as in the case at bar, the guardian, whose ward is without funds, represents to the court that the guardian could take the property on behalf of his ward and dispose of it at a profit for the benefit of his ward;

F. That an election to take by a guardian, whose ward is a party in interest and is without funds, upon representation by said guardian that he has obtained persons who will pay more than the appraised value of the property, is a valid election made in good faith;

G. That, when such an election is made by such guardian, subsequent to a joint election, by a competent person and a guardian of another incompetent person, both of said persons being owners of an undivided interest in said real estate, and before any journal entry approving said joint election, then such last election made by the guardian, whose ward is without funds, and with the consent of the Probate Court, constitutes a valid election in good faith; and, upon the hearing of their motion attacking the good faith and validity of such last election, said joint-electors are not entitled to call such guardian, as upon cross-examination, for the purpose of disclosing through said guardian the prospective purchaser and the amount of profit which would have been realized through land sale proceedings in the Probate Court in the event such election had

been the sole election and had been approved by the Common Pleas Court authorizing such guardian to take by such election;

H. That, under the facts and circumstances of record herein, the motion of plaintiff-guardian, for an order dismissing the temporary stay of the order of sale hereinbefore made, is well made and should be sustained; and

I. That, for the reasons and upon the findings hereinabove made and set forth, this Court should prepare an entry and order in conformity therewith and should dissolve and rescind its aforesaid temporary stay order of May 20, 1961, and should reaffirm its aforesaid order of sale hereinbefore made and issued on May 19, 1961, noting therein appropriate exceptions on behalf of said defendants.

And it being represented to the Court that defendants desire and intend to appeal from the aforesaid findings and orders, and have requested this Court to fix the amount of the supersedeas bond, the Court finds that such supersedeas bond should be fixed in the amount of $1,000.00.